UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LYNETTE J., | ) |
| Plaintiff, | ) |
| v. | ) No. 4:23 CV 1313 JMB |
| LELAND DUDEK, Acting Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

On August 16, 2021, Plaintiff Lynette J. filed for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* (the "Act") (Tr. 13, 89). On October 18, 2021, she filed for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* (Tr. 13, 88). Plaintiff alleges she became disabled on October 1, 2019, due to post-traumatic stress disorder ("PTSD"), anxiety attacks, bipolar, schizophrenia, knee pain, and headaches (Tr. 90). Plaintiff's alleged onset date was later amended to April 6, 2021, the day after her last unfavorable decision in prior proceedings (Tr. 13). Plaintiff's claim was denied by the Commissioner of Social Security through the administrative process and there is no dispute that she has exhausted her administrative remedies. See 42 U.S.C. § 405(g). Accordingly, this matter is before the Court for review of an adverse ruling by the Social Security Administration as set forth by the Administrative Law Judge ("ALJ") on November 8, 2022 (Tr. 13-24). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## I. Standard of Review and Legal Framework

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Ross v. O'Malley, 92 F.4th 775, 778 (8th Cir. 2024). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (quotation omitted); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (the standard "is not high"). In making this determination, the Court considers evidence that both supports and detracts from the ALJ's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007); see also 20 C.F.R. § 404.1520 (setting forth the five-step sequential evaluation process an ALJ uses to determine whether a claimant is disabled); Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (discussing the five-step process).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow, and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (citing Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). Similarly, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). If it is possible to draw a position from the evidence that supports the ALJ's findings, the reviewing court must affirm the decision. Id. With this standard in mind, the Court will address the specific arguments made by the parties.

## II. Discussion

On appeal, Plaintiff asserts that the ALJ erred in assessing her residual functional capacity ("RFC") by discounting her subjective statements regarding the severity of her mental health

impairments. Plaintiff contends that remand is necessary for the ALJ to properly consider her mental health symptoms. (Doc. 15). The Commissioner argues that substantial evidence on the record as a whole supports the ALJ's decision. (Doc. 18).

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017). "In examining the record, the ALJ must consider several factors, including the claimant's daily activities; the duration, intensity, and frequency of the symptoms; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; the claimant's work history; and the objective medical evidence." Hahn v. Kijakazi, No. 1:21-CV-17-SPM, 2022 WL 4534420, at *6 (E.D. Mo. Sept. 28, 2022) (citations omitted); see also Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

An ALJ may discount a claimant's subjective complaints when there are inconsistencies in the record as a whole. 20 C.F.R. §§ 404.1529, 416.929; Guilliams v. Barnhart, 393 F.3d 798, 801-02 (8th Cir. 2005); Polaski, 739 F.2d at 1322. The ALJ's decision, however, "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at *10. The ALJ is not required to discuss each above-mentioned factor though as long as "he acknowledges and considers the factors before discounting a claimant's subjective complaints." Hahn, 2022 WL 4534420, at *6 (quotation omitted).

Here, the ALJ concluded that Plaintiff had severe impairments of major depressive disorder, generalized anxiety disorder, PTSD, schizophrenia, dysthymic disorder, and adjustment disorder with emotional distress (Tr. 16).  The ALJ determined, however, that Plaintiff was no more than moderately limited in any area of mental functioning, and that she retained the RFC to "perform only simple, routine and repetitive tasks, requiring only simple work-related decisions, with few changes in the routine work setting, and no more than occasional interaction with supervisors, co-workers, and the general public" (Tr. 17-22).

In making the RFC determination, the ALJ initially considered Plaintiff's subjective complaints and activities of daily living, as set out in a December 16, 2020 Function Report and Plaintiff's testimony from the October 25, 2022 administrative hearing:

> The claimant reports she experiences PTSD related to being the victim of a failed 2001 carjacking attempt, and depression as the result of stress and being bullied while working for a past employer (see also Exhibit 6F/5). During the hearing, among other items, the claimant complained of difficulties with concentration, anxiety, crying spells, panic attacks, and drowsiness (citing a medi[c]ation side effect). She described having "breakdowns" every other day. The claimant also testified to having problems with forgetfulness, and relayed she had trouble remembering words to say and used post-it notes for reminders such as for appointments. In her Function Report, she wrote that she experienced panic attacks and anxiety that prevented her from focusing and caused issues in concentrating as well. She checked boxes endorsing troubles with memory, completing tasks, concentration, understanding, and following instructions (as well as seeing – but did not check any boxes pertaining to physical activities such as lifting or standing/walking). The claimant estimated she had an attention span of one minute, wrote she did not finish tasks, did not follow instructions well (citing her memory problems), and described a "horrible" ability to handle stress, as well as difficulties when faced with changes in routine. The claimant also described needing reminders to tend to her personal needs and grooming, and to take her medications. She denied issues in getting along with authority figures….
>
> With regard to her activities of daily living, the claimant reports she spends a lot of time in her recliner and does not cook since she started a kitchen fire in the past, but instead relies upon her daughter to fix her meals. However, she also testified she took a trip to New York with her sister and mother. In her Function Report, the claimant wrote that she was able to complete a myriad of typical activities, such as driving, spending time with people in person daily, shopping in stores, and

>   managing her financial matters. Overall, these allegations and activities of daily living are not very consistent, and are not in line with the objective medical record, which instead clearly supports the above residual functional capacity for unskilled work without any exertional or other physical limitations.

(Tr. 18-19).

The ALJ then recounted Plaintiff's March 12, 2021 consultative psychological examination with Dr. Alan Politte, during which she presented with depressed mood and poor memory,[1] followed by her her May 19, 2021 emergency room visit, during which she presented with anxiety, depression, and non-command auditory hallucinations (Tr. 20).[2] The ALJ noted that during the exam and the visit, Plaintiff presented with good appearance and hygiene; had an "agreeable attitude"; demonstrated "fair insight and judgment"; was "pleasant," "cooperative," "alert," "calm," and "in no acute distress"; and provided "coherent and relevant" responses (Tr. 20). The ALJ continued to discuss Plaintiff's subsequent counseling efforts with LCSW Scott McCloud at Care STL Health from May 2021 through August 2022, noting her disheveled appearance and reports of command hallucinations at her intake appointment, tracking her progress thereafter and achievement of "partial remission," and noting a single instance of relapse in August 2022 (Tr. 20-21).

The ALJ acknowledged that "prior to engaging in regular therapy and medication management treatment, the claimant's mental status examinations yielded abnormalities such as a disheveled appearance, and she complained of voices" (Tr. 21). The ALJ nevertheless found that

---

[1] During her exam, Plaintiff stated she had experienced symptoms of depression for several years (Tr. 598). Dr. Politte noted that she was on a number of medications, including trazodone, quetiapine, and sertraline, and that the front half of her skull was "near bald due to stress" (Tr. 600). Dr. Politte indicated her prognosis was "fair to poor depending on treatment and potential for future employment" (Tr. 602).
[2] During the visit, Plaintiff described her depression as worse over the past several weeks, and she indicated that her current medications were not working. (Tr. 611-12).

with regular therapy attendance and medication compliance, Plaintiff "experienced clear improvement in her symptoms" and her "mental status examinations have generally been unremarkable (albeit she remains tearful at times)" (Tr. 20-21). In addition to concluding Plaintiff's condition improved with regular health treatment, the ALJ also cited Plaintiff's "lack of intensive inpatient or frequent emergency treatment for exacerbations of mental health symptoms," as well as "her ability to participate in various typical activities of daily living" (Tr. 22).

Plaintiff argues that in discounting her subjective complaints, the ALJ failed to identify actual inconsistencies between the record and her reports, did not consider the waxing and waning nature of her mental impairments, and relied on a selective reading of the record. She further argues that the ALJ improperly relied on her lack of frequent inpatient or emergency treatment and on her daily activities. Plaintiff maintains that she would be unable to sustain competitive work due to interruptions in her ability to concentrate, crying spells, panic attacks, and flashbacks, referencing the Vocational Expert's testimony that an individual would be unable to sustain competitive employment if they were off task at least 20 percent of the workday. (Doc. 15 at 7-14 (citing Tr. 68)).

The Court finds that Plaintiff's medical records show a progression of symptoms that have waxed and waned. While the records indicate unremarkable findings at times, as documented by the ALJ, they also demonstrate periods of regression and ongoing changes to Plaintiff's prescribed medications in an effort to manage her symptoms. From July through December 2021, Plaintiff saw Dr. Kanwal Mahmood several times for psychiatric care and medication management. During a July 29, 2021 visit, she reported suicidal ideation, "panic attacks anxiety 7 times a week," the onset of command hallucinations, and more frequent flashbacks of trauma, and Dr. Mahmood adjusted her medications (Tr. 641-42). In subsequent visits, although Plaintiff represented

improvement in her mental health, she still continued to report symptoms of anxiety and depression, she consistently presented with concentration and short-term memory impairment, and Dr. Mahmood continued to adjust her medications (Tr. 701-03, 705-09, 720-21). During her counseling sessions with LCSW McCloud, although Plaintiff similarly represented improvement in her mental health at times, she also reported ongoing struggles with depression and anxiety; lack of energy and motivation; helplessness and fatigue; difficulty applying coping mechanisms, recalling words, and formulating streams of thought; and issues with medication management (Tr. 664-90, 731-734, 746-769). During her two visits in August 2022, she reported "relapse with morbid thoughts and tearfulness," she "presented [with] features consistent with [b]i polar cycling to tearfulness and sadness that has been recurring," and her "[c]oping strategies for emotional self protection w[ere] absent." (Tr. 746, 748). LCSW McCloud noted that her "[e]motional escalation potential poses an immediate threat to [her] stability and should be avoided" (Tr. 748).

The Court initially acknowledges that "recognition must be given to the instability of mental impairments and their waxing and waning nature after manifestation." Lillard v. Berryhill, 376 F. Supp. 3d 963, 984 (E.D. Mo. Mar. 25, 2019) (citation omitted). "Given the unpredictable course of mental illness, "symptom-free intervals and brief remissions are generally of uncertain duration and marked by the impeding possibility of relapse." Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (quotation omitted). Thus, "symptom-free intervals do not necessarily compel a finding of not disabled when a mental disorder is the basis of a disability claim." Doshie v. Saul, No. 4:18CV876 PLC, 2019 WL 4059899, at *14 (E.D. Mo. Aug. 28, 2019) (cleaned up). Moreover, "individuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms." Hutsell, 259 F.3d at 711

(quotation omitted). "Such individuals may be much more impaired to work than their signs and symptoms would indicate." Id. (quotation omitted).

With this framework in mind, the Court concludes that substantial evidence does not support the ALJ's RFC determination here because the ALJ's finding that Plaintiff experienced clear improvement in her symptoms is not consistent with the entire record. The record is replete with treatment notes documenting Plaintiff's ongoing mental health struggles, yet the ALJ's decision essentially limited the RFC analysis to those reflective of improvement. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." Bossio-Haines v. Kijakazi, No. 4:22-CV-1335 SRW, 2023 WL 6846968, at *5 (E.D. Mo. Oct. 17, 2023) (quotation omitted); see also Hutsell, 259 F.3d at 712 (finding that the ALJ "relied too heavily on indications in the medical record that [the claimant] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relationship to a claimant's ability to work or to her work-related functional capacity"). Because it is not clear from the decision whether the ALJ considered the totality of the evidence which could have supported a finding of disability, reversal is required to address this omission.[3] See Bossio-Haines, 2023 WL 6846968, at *5-6.

---

[3] To the extent Plaintiff argues the ALJ improperly relied on Plaintiff's lack of intensive inpatient or frequent emergency treatment and her daily activities, the Court notes that Plaintiff's lack of hospitalization does not necessarily preclude a finding of disability, see Cornell v. Colvin, No. 3:14-cv-05059-NKL, 2014 WL 7238006, at *4 (W.D. Mo. Dec. 17, 2014) (citing Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005)), and that Plaintiff's minimal daily activities are not necessarily inconsistent with symptoms of chronic mental instability, see Hutsell, 259 F.3d at 713-14. The Court nevertheless declines to address these issues more fully. See Berry v. Kijakazi, No. 4:20 CV 890 RLW, 2021 WL 4459699, at *9 (E.D. Mo. Sept. 29, 2021) ("Because remand is required, the Court does not address all of Plaintiff's arguments.").

The Court will therefore remand this matter to the Commissioner to more fully evaluate and supplement as necessary the medical and nonmedical evidence of record relating to the severity of Plaintiff's mental health impairments and her capacity for work-related activities.

\* \* \* \* \*

For the foregoing reasons, the Court finds that the ALJ's determination is not supported by substantial evidence on the record as a whole.

Accordingly, **IT IS HEREBY ORDERED** that the decision of the Commissioner is **reversed** and this matter is **remanded** for further consideration.

A separate Judgment shall accompany this Memorandum and Order.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of February, 2025.